UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DESAWN ABNER,<br><br>Plaintiff,<br><br>v.<br><br>WARDEN CHARLES ELLIS, et al.,<br><br>Defendants. | Civil Action No. 21-15359 (FLW)<br><br><br>MEMORANDUM AND ORDER |

Plaintiff Desawn Abner, who is currently confined at Mercer County Correctional Center ("MCCC") in Trenton, New Jersey, has filed a complaint pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights. Plaintiff asserts that he contracted the novel coronavirus disease 2019 ("COVID-19") in 2021, while incarcerated as a pretrial detainee at MCCC, and also claims that the conditions of his confinement at MCCC violate his civil rights. The Court previously granted Plaintiff's application to proceed *in forma pauperis* ("IFP application").[1] Federal law requires the Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit. *See* 28 U.S.C. § 1915(e)(2)(B).

Plaintiff alleges that on January 6, 2021, he was housed at MCCC and was a assigned to a "third bunk." Complaint at 5. He alleges that sometime between January 6, 2021, and March 28, 2021, he contracted COVID-19 and was hospitalized for an unspecified period of time. *Id.* at 5-6. He returned to MCCC, but was still sick, and was moved to a different unit where there were no

---

[1] The Court also directed to Plaintiff to explain why he included pages from another inmate's complaint in his submission to the Court. Because Plaintiff has responded that these pages are not part of his Complaint, the Court disregards them.

1

working showers or water fountains. *Id.* at 6. Plaintiff also had only one pair of boxer shorts, socks, and a t-shirt; Plaintiff complains that there is no coordinated laundry service at MCCC, and inmates are unable to do their own laundry. *Id.* Plaintiff filed grievances with other inmates about the conditions at MCCC, but these grievances were allegedly ignored. *Id.* On May 24, 2021, Plaintiff was moved to yet another unit where he became sick again with an unspecified illness. In this unit, Plaintiff was also assigned a third bunk and had "no showers, and so on." *Id.*

Plaintiff has sued Warden Charles Ellis and Brian M. Hughes for the alleged conditions of confinement at MCCC, as described above, as well as alleged failures related to the COVID-19 pandemic, such as the failure to adhere to social distancing requirements set forth by the Centers for Disease Control ("CDC"), the failure to protect Plaintiff from COVID-19, the lack of "mask exchange" and lack of testing for COVID-19. *See id.* at 6. Plaintiff also mentions that there is a "lack of cleanliness," "poor ventilation" and "no proper seating for meals." *Id.* at 4.

The Court construes Plaintiff to assert violations of his constitutional rights pursuant to 42 U.S.C. § 1983.[2] To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must show: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federally secured right. *See, e.g., Moore v. Tartler*, 986 F. 2d 682, 685 (3d Cir. 1983).

Plaintiff's cruel and unusual punishment claims must be analyzed under Fourteenth Amendment due process standards—as opposed to Eighth Amendment standards—because he was a pretrial detainee at the time of the alleged constitutional violations. *See Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 n. 4 (3d Cir. 2014) (noting that plaintiff's claims that arise when he is a pretrial detainee are prosecuted under the Due Process Clause).

---

[2] The Court does not construe Plaintiff to assert any violations of state law.

In accordance with the Supreme Court's decision in *Bell v. Wolfish*, 441 U.S. 520, 549 (1979), detainees may not be punished before they are adjudicated guilty. *Hubbard v. Taylor* 538 F.3d 229, 231 (3d Cir. 2008) (*Hubbard II*). The touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are "but an incident of some other legitimate governmental purpose." *Hubbard II*, 538 F.3d at 232 (quoting *Bell*, 441 U.S. at 538). "[T]he ultimate question" is whether conditions are "reasonably related to a legitimate governmental objective." *Id.* at 236 (quoting *Bell*, 441 U.S. at 549). The Third Circuit instructs courts to consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose. *Hope v. Warden York County Prison*, 972 F.3d 310, 326 (3d. Cir. 2020) (citing *Hubbard v. Taylor*, 399 F.3d 150, 159-160 (2005) (*Hubbard I*); *see also Union Cnty. Jail Inmates v. DiBuono*, 713 F.2d 984, 995–96 (3d Cir. 1983) (though double-bunking involved cramped, crowded cells for sleeping, it was not punishment because it eliminated floor mattresses and permitted more recreational space). In assessing whether conditions and restrictions are excessive given their purposes, the courts must acknowledge that practical considerations of detention justify limitations on "many privileges and rights." *Bell*, 441 U.S. at 545–46. Though not a convicted prisoner, a pretrial detainee "simply does not possess the full range of freedoms of an unincarcerated individual." *Id.* at 546; *see also Hope*, 972 F.3d at 326.

As the Supreme Court cautioned in *Bell v. Wolfish*:

> In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to

>indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.

441 U.S. at 540 n. 23 (citations omitted); *see also Block v. Rutherford*, 468 U.S. 576, 584 (1984) (noting the "very limited role that courts should play in the administration of detention facilities").

Here, Plaintiff has complained of a number of conditions of confinement that allegedly violate the Constitution, and the Court considers whether these conditions (individually or collectively) state a claim for relief under the Fourteenth Amendment.

As noted above, in order to determine whether conditions of confinement amount to punishment, courts must inquire as to whether the conditions "'cause [detainees] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them.'" *Hubbard* I, 399 F.3d at 159-60 (citations omitted). Here, Plaintiff fails to provide sufficient facts about the length of time he was deprived of working showers, water fountains, and laundry service, and it is unclear if these deprivations occurred sporadically or continuously from January 2021-May 2021. As such, the conditions of confinement claims premised on the lack of working showers, drinking fountains, and laundry service are dismissed <u>without prejudice</u>. Plaintiff may submit an amended complaint as to these claims, but he must provide the specific dates during which he was incarcerated at MCCC with no working showers, water fountains, and laundry service.

Plaintiff also complains that he was assigned to a triple bunk in two different units during the January 2021-May 2021 time period. The Third Circuit has held that double or triple-bunking of cells, alone, is not *per se* unconstitutional." *North v. White*, 152 F. App'x 111, 113 (3d Cir. 2005) (citing *Union County Jail Inmates v. DiBuono*, 713 F.2d 984, 1000 (3d Cir. 1983); *see also Crocamo v. Hudson County Correctional Center*, No. 06–1441, 2007 WL 1175753, at *5 (D.N.J. Apr. 19, 2007). At least one court in this District has dismissed without prejudice claims based on

4

triple bunking during the COVID-19 pandemic, as well as the failure to provide COVID-19 testing, because the Plaintiff failed to provide sufficient facts to suggest that the conditions were designed to punish or were excessive in relation to its legitimate purpose. *See Welch v. County of Burlington*, No. 21-4526, 2021 WL 3418680, at *7 (D.N.J. Aug. 21, 2021). In *Welch*, the Court relied on the Third Circuit's decision in *Hope* and required Plaintiff to allege whether other space was available to house inmates and whether the jail had access to COVID-19 tests but refused to test inmates. *See Hope*, 972 F.3d at 326 (quoting *Bell*, 441 U.S. at 545–46) ("In assessing whether conditions and restrictions are excessive given their purposes, the courts must acknowledge that practical considerations of detention justify limitations on 'many privileges and rights.'").

The Court likewise dismisses without prejudice Plaintiff's Fourteenth Amendment claims based on triple bunking, as well as Plaintiff's COVID-19-related claims based on the lack of social distancing, inadequate mask exchange, and COVID-19 testing. Plaintiff may submit an amended complaint that provides additional facts about whether MCCC had additional space to house inmates and/or implement social distancing, and whether MCCC had access to additional masks and/or COVID-19 tests, but refused to provide them to inmates.

Plaintiff also mentions lack of cleanliness and poor ventilation at MCCC; however, he provides no additional facts about these alleged conditions. The Court also dismisses without prejudice the Fourteenth Amendment conditions claims premised on these allegations. Plaintiff is free to provide more facts about the lack of cleanliness and poor ventilation at MCCC if he submits an amended complaint. Plaintiff complains about a lack of adequate seating at MCCC, which requires Plaintiff to stand while eating. The Court is doubtful that this type of condition could ever amount to punishment, and the Fourteenth Amendment claim premised on inadequate seating is dismissed without prejudice.

In addition to the deficiencies described above, Plaintiff appears to have sued Defendants Ellis and Hughes on the basis of *respondeat superior*. It is well established that to be held liable under § 1983, a supervisor must be personally involved in the alleged wrongs, and liability may not be premised solely on *respondeat superior*. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). There are two basic ways that a supervisor may be held liable under § 1983 – through direct participation or through policymaking. With respect to direct participation, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir. 2004). A supervisor-defendant may be also liable for unconstitutional acts undertaken by subordinates if the supervisor-defendant "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (alteration in original).

It is possible that Plaintiff is attempting to hold Defendants Ellis and/or Hughes liable for their creation of deficient policies to prevent the spread of COVID-19. "[T]o hold a supervisor liable...for their deficient policies...the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of [a constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133–34 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). To the extent Plaintiff is asserting that Defendants Ellis and/or Hughes created deficient policies at MCCC with respect to the COVID-19 pandemic, he fails to provide facts showing that the existing policies and/or practices created an unreasonable

risk of constitutional injury, that these Defendants were deliberately indifferent to the risk, and that Plaintiff's injuries resulted from the policies or practices. As such, if Plaintiff submits an amended complaint, he may not rely on a *respondeat superior* theory of liability and must provide additional facts to explain Defendants' involvement in the alleged wrongs.

Finally, to the extent Plaintiff asserts that any prison officials violated his rights by ignoring his grievances, he fails to state a claim for relief under § 1983. "The law does not recognize a stand-alone due process claim regarding access to the prison grievance program." *Harris v. Wetzel*, 822 F. App'x 128, 130 (3d Cir. 2020) (citing *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (additional citations omitted)). Therefore, Plaintiff fails to state a § 1983 claim based on the unavailability of the administrative grievance procedure. Amendment of this claim is futile because the conduct alleged does not violate a federal statute or constitutional right.[3]

For the reasons explained in this Memorandum and Order, the Complaint is dismissed in its entirety for failure to state a claim for relief pursuant to 28 U.S.C. § 1915(e)(2)(B). Plaintiff may submit an amended complaint within 30 days if he can cure the deficiencies in his federal claims for relief.

**IT IS THEREFORE**, on this  8th day of December 2021,

**ORDERED** that the Complaint is dismissed in its entirety pursuant to 28 U.S.C. 1915(e)(2)(B) for failure to state a claim for relief; and it is further

---

[3] If Plaintiff submits an amended complaint that states any claims for relief, his allegations may be relevant to whether the grievance program was available to him for purposes of exhausting administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *See Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016) ("[a] prisoner need not exhaust remedies [under the PLRA] if they are not 'available.' ")

**ORDERED** that Plaintiff may submit an amended complaint and move to reopen this matter within 30 days of the date of this Memorandum and Order to the extent he can cure the deficiencies in his Complaint as explained in this Memorandum and Order; and it is further

**ORDERED** that if Plaintiff fails to submit an amended complaint within 30 days, this dismissal will automatically convert to a dismissal with prejudice; and it is further

**ORDERED** that the Clerk of the Court shall send a copy of this Memorandum and Order to Plaintiff at the address on file and **CLOSE** this matter accordingly.

Freda L. Wolfson
U.S. Chief District Judge