UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DESAWN ABNER,** | Civil Action No. 21-15359 (FLW) |
| **Plaintiff,** | |
| v. | **MEMORANDUM OPINION & ORDER** |
| **WARDEN CHARLES ELLIS, et al.,** | |
| **Defendants.** | |

Plaintiff Desawn Abner, who is currently confined at Mercer County Correctional Center ("MCCC") in Trenton, New Jersey, has filed an Amended Complaint, ECF No. 8, alleging violations pursuant to 42 U.S.C. § 1983 and under state law.[1] For the reasons explained herein, the Court proceeds the Amended Complaint in part and dismisses it in part.

**I.    PROCEDURAL HISTORY & AMENDED COMPLAINT**

The Court previously granted Plaintiff's application to proceed *in forma pauperis* ("IFP application"). In his original complaint, Plaintiff alleged that he contracted the novel coronavirus disease 2019 ("COVID-19") in 2021, while incarcerated as a pretrial detainee at MCCC, and also claimed that the conditions of his confinement at MCCC violate his civil rights. The Court dismissed the Complaint in its entirety without prejudice pursuant to its screening authority under 28 U.S.C. § 1915(e) and provided Plaintiff with leave to submit an Amended Complaint. *See* ECF Nos. 1, 6.

Plaintiff subsequently submitted an Amended Complaint. *See* ECF No. 8. Plaintiff casts a wide net in his Amended Complaint and has sued numerous entities and individuals. His

---

[1] Plaintiff submitted duplicate copies of his Amended Complaint. ECF Nos. 7-8.

Amended Complaint names as Defendants the County of Mercer ("the County"), County Executive Brian Hughes ("Hughes"), MCCC Warden Charles Ellis ("Ellis"), MCCC Deputy Warden D.A. Paris ("Paris"), MCCC Chief of Internal Affairs Gary Britton ("Britton"), MCCC Captain Kownacki ("Kownacki"), John and Jane Doe Corrections Officers 1-50,[2] CFG Health Systems, LLC ("CFG"), CFG CEO Les Paschall ("Paschall"), MCCC Medical Director Dr. James Neal ("Neal"), MCCC Nurse Practitioner Jane Doe, John or Jane Doe Health Services Administrator, and John or Jane Doe Nurses1-10.[3]

In the second week of January 2021, Plaintiff filed grievances about 1) being housed in "deplorable living conditions" without cleaning supplies, 2) being housed with other inmates who had health issues including the flu and skin rashes, and 3) and receiving no response from the medical department about his sick call slips.  Complaint at ¶ 19.

In January 2021, Plaintiff was diagnosed with COVID-19 after two weeks of feeling ill. *Id.* at ¶ 20.  During this time period, "the medical department" was refusing to provide inmates with COVID-19 tests, refusing to provide inmates with six feet of "social distance" per the Centers for Disease Control ("CDC") guidelines, and refusing to house inmates in other available housing

---

[2] Plaintiff names John and Jane Doe corrections officers 1-50 in paragraphs 10 and 17.  The Court assumes that these John and Jane Doe corrections officers 1-50 are duplicative.

[3] Where appropriate, the Court refers to the County and Hughes together as "the County Defendants."  The Court refers to Ellis, Paris, Britton, Kownacki, and the John and Jane Doe Corrections Officers 1-50 collectively as "the Corrections Defendants."  Plaintiff alleges that each of the Corrections Defendants "has complete control" over staff and inmates at MCCC and reports to the supervisors above them in the chain of command.  Plaintiff also alleges that each of the Corrections Defendants reports to the County Defendants.  Finally, the Court refers to CFG, Paschall, Neal, the Jane Doe Nurse Practitioner, the John or Jane Doe Health Services Administrator, and the John or Jane Doe Nurses 1-10 collectively as "the Medical Defendants."  Plaintiff alleges that each of the Medical Defendants reports to the supervisor above them in the chain of command and also reports to the County Defendants.

units without infected inmates. *See id.* Plaintiff alleges that the "Medical Nurse Defendants," purposely delayed treatment and neglected their duties from 2021 to present. *See id.* ¶ 20. Plaintiff alleges that "all Defendant(s) in this matter refused to provide Masks on a daily basis as recommended by CDC guidelines." *Id.* Moreover, all Defendants also allegedly failed to respond to grievances regarding the denial of masks. *Id.*

Plaintiff alleges generally that the County, Hughes, Ellis, Paris, Britton, Kownacki, and John and Jane Does 1-50 are aware of "these numerous incidents and numerous civil rights violations" and have ignored Plaintiff's grievances. *Id.* at ¶ 21. Because inmates' grievances are not answered, the inmates cannot appeal. *Id.*

Plaintiff alleges that he contracted COVID-19 and suffered "kidney shutdown," problems urinating, and skin rashes as a result. *Id.* at ¶ 22. Plaintiff alleges he was treated for COVID-19 after "numerous complaint(s) and delay(s)" in treatment, which aggravated his injuries. *See id*. Plaintiff also alleges that he was placed in an isolation unit with inmates with COVID-19 (and with inmates without COVID-19), despite other space being available within the facility. *See id.* ¶ 23.

Plaintiff further alleges that he was placed in a housing unit with mold in the shower and unit areas. *See id.* Inmates were also forced to "shower from the sink" because the showers were inoperable for several months. In addition, cleaning supplies were provided only "sporadically" despite twice daily requests from inmates. *Id.* Plaintiff alleges that the living conditions were "beyond deplorable," "reprehensible," and "arbitrary and capricious" *Id.* Later in the Amended Complaint, Plaintiff alleges there is mold throughout the facility and there is sporadic or no recreation. *Id.* at ¶ 28. The mold and asbestos allegedly "covers all the ducts blocking and preventing fresh air entering the housing unit with Inmate(s)/ Pretrial Detainee(s) with asthma and

3

other respiratory problems." *Id.* Plaintiff also alleges Ellis, Paris, Britton, Kownacki, and the corrections officers 1-50 only sporadically provide clean linens and do not provide "cleaning services" for inmate's clothing, which causes inmates to get skin rashes. *Id.*

Plaintiff also alleges that there is a "staff shortage" on weekends with only one corrections officer for four dormitories, and each dormitory can contain up to 35 people. *Id.* at ¶ 24. Plaintiff alleges that the staff shortage creates an unsafe environment because the corrections officers cannot monitor all the dormitories at once. *Id.*

Plaintiff generally alleges that the County, Hughes, Ellis, Paris, Britton, Kownacki, and John and Jane Does 1-50 "are aware of all violations occurring" and are aware of nonviolent inmates being placed around violent inmates, leading to inmates being assaulted and abused. *Id.* at ¶ 25. Plaintiff alleges that he filed a tort claims notice in June 2021 but received no response.[4] *See id.*

Plaintiff also alleges that the County, Hughes, Ellis, Paris, Britton, and Kownacki have a policy, practice, or custom of not properly investigating complaints and not taking corrective measures and allow corrections officers to do "whatever they feel like doing," including depriving inmates and detainees of their civil rights. *Id.* at ¶ 26.

Plaintiff further alleges that Neal, the Medical Director, the Jane Doe Nurse Practitioner, the John or Jane Doe Health Services Administrator, and the John or Jane Doe Nurses 1-10 also have "a pattern/practice/policy/custom" of not investigating inmate complaints and not taking correction action and allowing the correctional and medical staff "to do whatever they feel like doing[,]" including depriving inmates of medically necessary medical treatment. *Id.* at ¶ 27.

---

[4] There are no well-pleaded facts suggesting that Plaintiff was housed with violent inmates or that he was assaulted or threatened with assault by another inmate or inmates.

4

**II.   DISCUSSION**

Federal law requires the Court to screen Plaintiff's Amended Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6) and/or to dismiss any defendant who is immune from suit. *See* 28 U.S.C. § 1915(e)(2)(B).

Plaintiff brings claims under 42 U.S.C. § 1983 under the Eighth and Fourteenth Amendments. He appears to assert a constitutional right to file grievances under the New Jersey State Constitution[5] as well as a tort claim for intentional "emotional duress" under the New Jersey Tort Claims Act ("NJTCA").[6] He also attempts to bring claims for reckless endangerment under New Jersey's Criminal Code. *See* Complaint at Counts 1-6. Plaintiff also seeks a preliminary and permanent injunction against CFG, Paschall, Neal, and Nurse Practitioner Jane Doe to "refrain from delaying/denying treatment by a Specialist when it is medically necessary." *See* Relief Section. Finally, Plaintiff seeks a preliminary and permanent injunction to clean all housing units within MCCC where mold is located. *See id.*

  a. **§ 1983 and NJCRA Claims**

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

---

[5] Because Plaintiff references the New Jersey Constitution, the Court construes him to bring his civil rights claims under the New Jersey's Civil Rights Act ("NJCRA") as well as § 1983. Because the NJCRA is the state law analog to § 1983, the Court analyzes these claims together.

[6] Plaintiff cites to N.J.S.A. 59:2-10, which reads as follows: "A public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct."

Since Plaintiff is a pretrial detainee, the Fourteenth Amendment governs his claims.[7] *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).

To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted).

Only conditions of confinement that "cause [detainees] to endure genuine privations and hardship over an extended period of time" violate due process. *Bell*, 441 U.S. at 542. Additionally, "'a particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68); *see also Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). Courts should consider the totality of the circumstances in evaluating such a claim. *Bistrian*, 696 F.3d at 373 ("In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution.").

To satisfy the subjective component of the analysis, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious

---

[7] Plaintiff mentions the Eighth Amendment, but that provision applies to convicted prisoners only.

risk to the detainee's health or safety.  *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); see also *Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

"The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers–Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).  Knowledge may be shown where the official has actual notice of the risk, *Nami v. Fauver*, 82 F.3d 63, 67–68 (3d Cir. 1996), or where the risk was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Farmer*, 511 U.S. at 842.

The Court begins with Plaintiff's claim that there is mold throughout MCCC, including in the units and the showers, and that mold and asbestos blocks the air ducts at MCCC.  The Court construes Plaintiff to raise this claim against the Corrections Defendants, Hughes, and the County. The presence of toxic mold or asbestos in a prison may violate the Constitution if it poses a substantial risk of serious harm.  *See Fontroy v. Owens*, 150 F.3d 239, 244 (3d Cir. 1998) (considering deliberate indifference claim based on asbestos exposure in prison); *Hall-Wadley v. Maintenance Department*, 386 F. Supp.3d 512, 518 (E.D. Pa., 2019) (considering deliberate

indifference claim based on mold exposure); *Johnson v. Beard*, No. 09- 886, 2014 WL 4793905, at *6 (M.D. Pa. Sept. 25, 2014) ("Toxic mold which causes [an] inmate to suffer headaches, sinus problems, blurred vision, breathing difficulty, irritated eyes and fatigue cans [sic] set forth a viable conditions of confinement claim.") (internal quotation marks and citation omitted); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (holding that inmates should not be "expose[d] to [contaminants] that pose an unreasonable risk of serious damage to his future health").

Here, Plaintiff seeks injunctive relief to remediate the mold at MCCC, as well as compensatory and punitive damages.[8] At this early stage, the Court finds that Plaintiff has sufficiently alleged that the mold and asbestos throughout the air ducts presents a risk to his health and safety.[9] Plaintiff alleges generally that the Corrections Defendants are aware of all constitutional violations in connection with his conditions of confinement. At this early stage, it is plausible that Ellis, Paris, Britton, and Kownacki, who allegedly work at MCCC and are in charge of the inmates at the facility, have actual knowledge that there is mold and asbestos in the

---

[8] Plaintiff may not be able to recover compensatory damages based on the mold and asbestos in the air ducts of the prison or mold in the showers because he fails to allege that he has a present physical injury resulting from the mold or asbestos exposure. *See, e.g., Fontroy v. Owens*, 150 F.3d 239, 244 (3d Cir. 1998) ("Federal law does not provide inmates, who suffer no present physical injury, a cause of action for damages for emotional distress allegedly caused by exposure to asbestos."). Plaintiff, however, seeks punitive damages and can always seek nominal damages.

[9] Courts in this circuit have dismissed damages claims involving mold exposure where the prisoner fails to allege that there is a serious risk of harm from the mold exposure. *See, e.g.*, *Hall-Wadley*, 386 F. Supp.3d at 518 (dismissing pretrial detainee's claim regarding black mold in the showers, which resulted in his slip and fall accident, where Plaintiff failed to allege he suffered injury or a risk of harm from the mold exposure); *Stokelin v. A.C.J.F. Warden*, No. 17-3484, 2018 WL 4357482, at *2 (D.N.J. Sept. 13, 2018) (holding that plaintiff failed to allege any risk of harm stemming from black mold in the showers); *Patterson v. Quigley*, No. 16- 1604, 2018 WL 1566793, at *5 (E.D. Pa. Mar. 30, 2018) ("[Plaintiff] has not pleaded that the mold made him ill or somehow affected his health, which would provide plausibility that the mold was an excessive risk to his health or safety."); *Peterkin v. Jeffes*, 661 F. Supp. 895, 915 (E.D. Pa. 1987) (finding that although mold and lime deposits in showers were unpleasant, they did not violate the Eighth Amendment since they posed no real health hazard).

ductwork at MCCC, and the Court will proceed the mold and asbestos exposure claims against them in their personal capacities for damages and in their official capacities for injunctive relief.

In addition to the mold and asbestos, Plaintiff also complains other seemingly longstanding conditions at MCCC. Plaintiff alleges that he was placed in a housing unit where the showers were inoperable for several months. Plaintiff also alleges that inmates have insufficient cleaning supplies, that there was no laundry service, and the lack of clean clothing caused inmates to get rashes. Plaintiff also describes his living conditions as deplorable and reprehensible. Taken together with alleged claims of mold and asbestos exposure, these allegations of longstanding sanitation issues are sufficient to state a claim for relief against Warden Ellis, Deputy Warden Paris, Britton, and Captain Kownacki in their personal capacities for damages.[10]

It is not plausible, however, that County Executive Hughes would have personal knowledge that there is mold and asbestos in the ductwork at MCCC, or that he knew about the lack of operable showers, laundry service, clean clothing, and cleaning supplies, absent additional factual support. The conditions of confinement claims are dismissed without prejudice as to Hughes.

These conditions of confinement claims are likewise dismissed against the John and Jane Doe Corrections Officers 1-50, who are neither described nor differentiated as required by New Jersey's fictitious defendant rule.[11]

---

[10] Although the Court dismisses Plaintiff's COVID-19 related claims below, it is notable that the alleged unsanitary conditions occurred during the COVID-19 pandemic.

[11] Civil rights claims may be asserted against fictitious defendants pursuant to New Jersey's fictitious defendant rule, which reads as follows:

> In any action, ... if the defendant's true name is unknown to the
> plaintiff, process may issue against the defendant under a fictitious

Plaintiff also fails to state a *Monell* claim against the County for the alleged mold and asbestos exposure, as well as the lack of operable showers, laundry service, clean clothes, and cleaning supplies.  A *Monell* claim is a specific type of § 1983 claim where a plaintiff must demonstrate that a constitutional violation was caused by a policy, custom, or practice of a municipality.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996); *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014).  Plaintiff fails to allege that the mold and asbestos exposure or unsanitary conditions resulted from a policy or custom of the County, and this claim is dismissed without prejudice as to the County.

Plaintiff also appears to allege that inadequacies in the COVID-19 protocols at MCCC violate his constitutional rights and caused him to contract COVID-19 in January 2021.  In *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020), immigration detainees alleged that due to their ages and medical conditions, their confinement at county jails during the COVID-19 pandemic amounted to punishment and/or deliberate indifference to their serious medical needs.  Although the Third Circuit agreed that the detainees' particular vulnerabilities could be assessed in determining whether their conditions of confinement amounted to punishment, the court rejected the detainee's arguments that exposure to COVID-19 was per se unconstitutional and that the government must entirely eliminate the detainees' risk of exposure in order to comply with

---

name, stating it to be fictitious and adding an appropriate description sufficient for identification.

N.J.R. 4:26–4.  "The fictitious party rule may be used only if the plaintiff exercised due diligence to ascertain the defendant's true name before and after filing the complaint." *DeRienzo v. Harvard Industries, Inc.*, 357 F.3d 348, 353 (3d Cir. 2004) (citing *Farrell v. Votator Div. of Chemetron Corp.*, 62 N.J. 111, 299 A.2d 394, 396 (1973)).  The fictitious name designation also must have appended to it "an appropriate description sufficient to identify" the defendant.  *Id.* (quoting *Rutkowski v. Liberty Mut. Ins. Co.*, 209 N.J. Super. 140, 506 A.2d 1302, 1306–07 (1986)).  Here, the Court dismisses <u>all claims</u> against the John and Jane Doe Corrections Officers 1-50 as improperly pleaded because these Defendants are not sufficiently described or differentiated as required by the fictitious defendant Rule.

constitutional mandates. *See* 972 F.3d at 329. The Third Circuit also warned against using "ideal" responses to COVID-19, such as keeping six feet of separation (*i.e.* social distancing), "as the sine qua non of constitutional detention," even for individuals at higher risk of serious harm if they contract COVID-19. *See id.* at 327.

Here, Plaintiff complains about the fact that he and other inmates were denied routine testing for COVID-19, were not provided with new masks on a daily basis, were unable to practice social distancing of six feet, and were not adequately separated from inmates who had COVID-19, despite available space. Plaintiff complains about less than ideal protocols for social distancing, testing, masking, and sanitation, but he provides no facts to suggest that he has a particular vulnerability to COVID-19, such that his detention under these less than ideal conditions could amount to punishment. Because Plaintiff has not provided any well-pleaded facts to suggest he has a particular vulnerability to COVID-19 (such as age or medical condition), the Court finds that his confinement under these less than ideal conditions during the COVID-19 pandemic does not amount to punishment under the Fourteenth Amendment. In addition, there are no facts to suggest that any of the Defendants knew Plaintiff had a particular vulnerability to COVID-19 and ignored that risk of serious harm as required to state a deliberate indifference claim.

To the extent Plaintiff seeks to hold Hughes, the Corrections Defendants, and/or the Medical Defendants liable in their personal capacities for their creation of deficient policies to prevent the spread of COVID-19, these claims also fail to state a claim for relief. "[T]o hold a supervisor liable...for their deficient policies...the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of [a constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury

11

resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133–34 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).  Here, Plaintiff fails to provide sufficient provide facts showing that the existing policies and/or practices at MCCC created an unreasonable risk of constitutional injury to Plaintiff, or that these Defendants were deliberately indifferent to the risk.

Plaintiff also fails to state a *Monell* claim against the County based on deficient COVID-19 policies or customs, as *Monell* liability cannot lie where there is no underlying constitutional violation.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see also Stephens v. City of Englewood*, 689 F. App'x. 710, 713 (3d Cir. 2017) (affirming district court's dismissal of Monell claims against the police department and city where Plaintiffs failed to establish an underlying constitutional violation against the individual defendant-detectives); *Johnson v. City of Phila.*, 837 F.3d 343, 354 (3d Cir. 2016) (citing *Grazier ex rel. White v. City of Phila.*, 328 F.3d 120, 124 (3d Cir. 2003)) (holding that a *Monell* claim is not cognizable absent an underlying constitutional violation).

For these reasons, Plaintiff's Fourteenth Amendment claims regarding alleged inadequacies in the COVID-19 protocols are dismissed without prejudice as to all Defendants.

The Court next addresses Plaintiff's allegations that the Medical Defendants were deliberately indifferent to his serious medical needs when he contracted COVID-19.  The Constitution requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).  As a pretrial detainee, Plaintiff's right to adequate medical care arises under the Due Process Clause of the Fourteenth Amendment.  *See Natale v. Camden County Correctional Facility*, 318 F.3d 575, 581 (3d Cir. 2003).  In order to state a claim for relief, Plaintiff must show

12

a "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *See Natale*, 318 F.3d at 582 (citation omitted).

Plaintiff alleges in the Amended Complaint that he contracted COVID-19, resulting in "kidney shutdown," problems urinating, and rashes. Plaintiff also alleges that the "medical department" ignored sick slips and the "Medical Nurse Defendants," purposely delayed treatment and neglected their duties from 2021 to present. Plaintiff also alleges in vague terms that he eventually received care after numerous delays. Plaintiff further alleges that Neal, the Medical Director, the John or Jane Doe Nurse Practitioner, the John or Jane Doe Health Services Administrator, and the John or Jane Doe Nurses 1-10 also have "a pattern/practice/policy/custom" of not investigating inmate complaints and not taking correction action and allowing the correctional and medical staff "to do whatever they feel like doing[,]" including depriving inmates of medically necessary medical treatment. In addition to damages, Plaintiff seeks a preliminary and permanent injunction to allow him to see specialists when needed.

Plaintiff's allegations that his kidneys shut down after he contracted COVID-19 are sufficient to show a serious medical need. But Plaintiff does not provide any well-pleaded facts showing that any of the individual Medical Defendants <u>knew</u> that Plaintiff required medical attention for his kidneys and were deliberately indifferent to that need by denying or delaying care. Although Plaintiff lists his medical issues, does not allege that he told or attempted to tell any of the individual Medical Defendants that he had symptoms that would suggest that his kidneys were in danger of shutting down. Moreover, the Amended Complaint improperly lumps all the John

13

and Jane Doe nurses together and they are not differentiated from one another in any way.[12] For these reasons, the Court is unable to determine whether any of the John or Jane Doe Nurses, the Jane Doe Nurse Practitioner, or any other Medical Defendants knew that Plaintiff required medical care for his kidneys or for other serious complications of COVID-19 and improperly denied or delayed that care. Plaintiff's allegations about the purported negligence of the John and Jane Doe Nurses are equally vague and conclusory and fail to state a claim for relief under state law for medical negligence.

Plaintiff has also sued CFG, but entities like CFG, which provide healthcare services for to the County pursuant to a contract, "cannot be held responsible for the acts of its employees under a theory of *respondeat superior* or vicarious liability." *See Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003) (citing *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Thus, to state a claim for relief, Plaintiff must provide facts showing that CFG had a relevant policy or custom, and that the policy or custom caused the constitutional violation he alleges. *See id.* (citing *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)).

To proceed on a *Monell* theory, a plaintiff must identify a specific policy or custom of the entity that caused the constitutional violation at issue and must typically allege a pattern of similar past conduct to show that the entity was on notice that the policy or custom caused the alleged violation. *See, e.g.*, *Schlaybach v. Berks Heim Nursing & Rehabilitation*, 839 F. App'x. 759, 760 (3d Cir. 2021) (affirming dismissal of *Monell* claim where the plaintiff did not sufficiently allege

---

[12] Plaintiff's use of John and Jane Doe 1-10 is improper, as he does not provide descriptions of each Defendant or differentiate among them, as required by New Jersey's fictitious defendant Rule.

that County hospital had a history of providing inadequate care to nursing home residents after they fall or was otherwise indifferent to their post-fall medical needs and failed to allege a pattern of prior incidents evidencing deliberate indifference).

Here, Plaintiff alleges very generally that there is a policy, practice or custom of not investigating inmate complaints and not taking correction action and allowing the correctional and medical staff "to do whatever they feel like doing[,]" including depriving inmates of medically necessary medical treatment. These allegations are far too general to state a claim for relief under a *Monell* theory and could encompass a wide range of misconduct. Moreover, Plaintiff fails to show that any of the individual medical providers denied him necessary medical attention for his kidneys or other serious COVID-19 symptoms, and thus also fails to state a claim for relief against CFG under *Monell*.

Finally, like CFG, the supervisory Medical Defendants may not be sued under a respondeat superior theory, and there are no well-pleaded facts to show that Neal, Paschall, the Jane Doe Nurse Practitioner, or the John or Jane Doe Health Services Administrator knew that medical providers at MCCC were routinely denying inmates necessary medical treatment and failed to take action.

For all these reasons, the inadequate medical care claims, including Plaintiff's request for injunctive relief, are dismissed without prejudice as to all the Medical Defendants.

Plaintiff also attempts to allege deliberate indifference claims against the Corrections Defendants and the County Defendants premised on a purported staff shortage and the alleged housing of violent inmates with nonviolent inmates. Here, Plaintiff provides insufficient facts suggesting that he personally was housed with violent inmates and therefore fails to show that he faced a substantial risk of harm due to housing assignments or the staff shortage. Although

15

Plaintiff alleges very generally that the staffing shortage and the housing decisions have resulted in inmate assaults, he provides no additional facts about when the assaults occurred or the circumstances surrounding the assaults. Plaintiff also alleges generally that all Defendants are aware of the inmate assaults, but provides insufficient facts showing that there is a pattern of prior inmate assaults that would place any of the Corrections Defendants or the County on notice of the potential for constitutional violations due to the housing and/or staffing issues. Moreover, there are no allegations that there is a specific policy or custom that led to the constitutional violation, as required for *Monell* or supervisory liability. This claim is dismissed without prejudice as to the Corrections Defendants and the County Defendants for failure to state a claim for relief.

To the extent Plaintiff continues to allege that any of the Defendants violated his constitutional rights by ignoring his grievances, he fails to state a claim for relief under § 1983 or the NJCRA.[13] "The law does not recognize a stand-alone due process claim regarding access to the prison grievance program." *Harris v. Wetzel*, 822 F. App'x 128, 130 (3d Cir. 2020) (citing *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (additional citations omitted)). Therefore, Plaintiff fails to state a § 1983 or NJCRA claim based on the unavailability of the administrative grievance procedure.[14]

    b. **State Law Claims**

---

[13] Although Plaintiff has a First Amendment right to file grievances, there are no facts to suggest that any prison officials retaliated against him for filing grievances. *See Milhouse v. Carlson*, 652 F.2d 371, 373–74 (3d Cir.1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages).

[14] Plaintiff's allegations may be relevant to whether the grievance program was available to him for purposes of exhausting administrative remedies on his conditions of confinement claims pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). *See Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016) ("[a] prisoner need not exhaust remedies [under the PLRA] if they are not 'available.' ")

The Court next addresses the remaining state law claims. To the extent Plaintiff seeks to bring a state law claim for intentional infliction of emotional distress, the Court dismisses that claim without prejudice. To make out a common law claim for intentional infliction of emotional distress, a plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe. *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 587 (2009). Under the fourth element, "the distress must be so severe that no reasonable person could be expected to endure it. Severe emotional distress refers to any type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Aly v. Garcia*, 333 N.J. Super. 195, 204 (N.J. Super. App. Div. 2000) (citing *Taylor v. Metzger,* 152 N.J. 490, 515 (1998). Indeed, [i]t is not enough to establish that a party is acutely upset by reason of the incident. In order to be actionable, the claimed emotional distress must be sufficiently substantial to result in physical illness or serious psychological sequelae." *Id.* Here, Plaintiff has not sufficiently pleaded any of the elements of an intentional infliction of emotional distress claim, and this claim is dismissed without prejudice as to all Defendants.

Plaintiff also seeks to bring reckless endangerment claims under New Jersey's Criminal Code. Plaintiff cites to a repealed state statute in his Amended Complaint, and the Court construes him to allege a claim for reckless endangerment of another person, pursuant to N.J.S.A. 2C:24-7.1. Plaintiff may not bring a state law criminal claims in this civil action unless the New Jersey Legislature specifically provides for a private right of action. *See, e.g., Brown v. Progressive Specialty Insurance Company*, 763 F. App'x. 146, 147 (3d Cir. 2019) (state law criminal statutes neither authorize civil actions nor create civil liabilities; *R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co.*, 773 A.2d 1132, 1142 (N.J. 2001) ("New Jersey courts have been reluctant to

infer a statutory private right of action where the Legislature has not expressly provided for such an action.). As such, the Court dismisses the claim for reckless endangerment as to all Defendants.

### III. CONCLUSION

For the reasons explained in this Memorandum Opinion & Order, the Complaint is proceeded in part and dismissed in part pursuant to the Court's screening authority under 28 U.S.C. § 1915(e)(2)(B). Any further amendments in this case must be made after service by appropriate motion pursuant to Fed. R. Civ. P. 15.

**IT IS THEREFORE**, on this 23rd day of November 2022,

**ORDERED** that this matter shall be marked as OPEN so that the Court can review Plaintiff's Amended Complaint; and it is further

**ORDERED** that the Complaint is proceeded in part and dismissed in part pursuant to 28 U.S.C. 1915(e)(2)(B) as follows:

1.) The Fourteenth Amendment and NJCRA conditions of confinement claims regarding exposure to mold and asbestos, lack of operable showers, lack of clean clothes/laundry service, and lack of cleaning supplies shall PROCEED against Warden Charles Ellis ("Ellis"), MCCC Deputy Warden D.A. Paris ("Paris"), MCCC Chief of Internal Affairs Gary Britton ("Britton"), MCCC Captain Kownacki ("Kownacki");

2.) The remaining claims and Defendants are dismissed WITHOUT PREJUDICE; the Clerk of the Court shall terminate from the docket the County of Mercer, Mr. Brian Hughes, the John and Jane Doe Corrections Officers 1-50, CFG Health Systems, LLC, Mr. Les Paschall, Dr. James Neal, MCCC Nurse Practitioner Jane Doe, John/Jane Doe Health Services Administrator, and John or Jane Doe Nurses1-10; and it is further

**ORDERED** that the Clerk of the Court shall provide Plaintiff with a copy of the USM-285 form for Defendants Ellis, Paris, Britton and Kownacki; and it is further

**ORDERED** that Plaintiff shall complete the form for Defendants Ellis, Paris, Britton and Kownacki, and return them to the Clerk of Court, Clarkson S. Fisher Building & U.S. Courthouse, 402 East State Street, Trenton, NJ 08608; and it is further

**ORDERED** that upon Plaintiff's sending of the completed forms to the Clerk of the Court, the Clerk shall issue summons, and the United States Marshal shall serve a copy of the Amended Complaint (ECF No. 8), summons, and this Order upon Defendants pursuant to 28 U.S.C. § 1915(d), with all costs of service advanced by the United States; and it is further

**ORDERED** that Defendant(s) shall file and serve a responsive pleading within the time specified by Federal Rule of Civil Procedure 12; and it is further

**ORDERED** that, pursuant to 28 U.S.C. § 1915(e)(1) and § 4(a) of Appendix H of the Local Civil Rules, the Clerk shall notify Plaintiff of the opportunity to apply in writing to the assigned judge for the appointment of pro bono counsel; and it is further

**ORDERED** that, if at any time prior to the filing of a notice of appearance by Defendant(s), Plaintiff seeks the appointment of pro bono counsel or other relief, pursuant to Fed. R. Civ. P. 5(a) and (d), Plaintiff shall (1) serve a copy of the application by regular mail upon each party at his last known address and (2) file a Certificate of Service;[15] and it is further

**ORDERED** that the Clerk of the Court shall serve Plaintiff with copies of this Memorandum Opinion & Order via regular mail.

---

[15] After an attorney files a notice of appearance on behalf of a Defendant, the attorney will automatically be electronically served all documents that are filed in the case.

                                                     <u>/s/ Freda L. Wolfson</u>
                                                     Freda L. Wolfson
                                                     U.S. Chief District Judge